**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| **A.B.,** | : | |
| | : | |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | **Case No. 4:26-cv-345-CDL-CHW** |
| | : | **28 U.S.C. § 2241** |
| **Warden, STEWART DETENTION CENTER,**[1] | : | |
| | : | |
| **Respondent.** | : | |

**ORDER AND RECOMMENDATION**

Before the Court is Petitioner Alpha Bah's application for a writ of habeas relief pursuant to 28 U.S.C. § 2241 (Doc. 1). For the following reasons it is **RECOMMENDED** that Petitioner's application for habeas relief (Doc. 1) be **DISMISSED**.

**BACKGROUND**

Petitioner is a native and citizen of Guinea. (Doc. 5-1 at ¶ 5). On November 7, 2023, U.S. Border Patrol ("USBP") first encountered Petitioner near San Ysidro, California. *Id.*; *see also* (Doc. 5-2). Petitioner was issued a Notice to Appear ("NTA") on the same date, alleging inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(A)(i), but was released on his

[1] [T]he default rule [for claims under 28 U.S.C. § 2241] is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citations omitted). The Clerk's office is **DIRECTED** to change the docket to reflect the Warden of Stewart Detention Center as the sole appropriately named respondent in this action.

own recognizance via an I-220A form. *Id.*; *see also* (Doc. 5-3). On October 28, 2024, Petitioner filed an application for relief from removal. (Doc. 5-1 at ¶ 7).

On February 5, 2025, United States Immigration and Customs Enforcement ("ICE") took Petitioner into custody at the Clayton County Sheriff's Office. *Id*. at ¶ 8. On July 24, 2025, Petitioner first appeared before an Immigration Judge ("IJ") for a calendar call hearing at which Petitioner's case was continued for him to seek counsel. (Doc. 5-5). On October 9, 2025, Petitioner appeared before an IJ again for another scheduling court date at which Petitioner's case was continued again to amend his application for relief. (Doc. 5-6). On November 26, 2025, Petitioner appeared a third time before an IJ with counsel for a bond hearing at which the IJ ruled that she did not have jurisdiction pursuant to *Hurtado*. (Doc. 5-7); *see also Matter of Yajure Hurtado,* 29 I. & N. Dec. 216 (BIA 2025). On December 11, 2025, Petitioner appeared a fourth time before an IJ, at which his merits hearing was set. (Doc. 5-8). On January 2, 2026, the Department of Homeland Security ("DHS") filed a Motion to Pretermit Petitioner's application for relief from removal. (Doc. 5-1 at ¶ 13). On January 9, 2026, an IJ granted DHS' Motion to Pretermit and ordered Petitioner removed to Uganda, a third country. (Doc. 5-9). The IJ specifically found that "[t]he Department of Homeland Security (DHS) moved the Immigration Judge to pretermit the respondent's applications. . .[t]he respondent is barred from applying for such forms of protection. . ." *Id*. at 2. (relying on *Agreement Between the Government of the United States of America and the Government of the Republic of Uganda for Cooperation in the Examination of Protection Requests*, 90 Fed. Reg. 42, 597 (Sept. 3, 2025) (U.S.- Uganda

ACA)). On January 20, 2026, Petitioner filed an appeal with the Board of Immigration Appeals ("BIA"). (Doc. 5-10). The record indicates that Petitioner's appeal remains pending before the BIA.

On March 4, 2026, Petitioner filed his application for habeas relief with this Court. (Doc. 1). Petitioner asserts three grounds in his Petition. First, Petitioner claims his removal to a third country violates 8 U.S.C. § 1158(a)(2)(A). *Id*. at ¶¶ 17-20. Second, Petitioner alleges that his third-country removal violates the Fifth Amendment Due Process Clause. *Id*. at ¶¶ 21-23. Third, Petitioner asserts that his third-country removal violates the Convention Against Torture ("CAT") because "CAT prohibits removal where there is a substantial [risk] of torture including indirect removal through onward transfer. . .". *Id*. at ¶¶ 24-25 (relying on *Nasrallah v. Barr*, 590 U.S. 573, 140 S. Ct. 1683, 207 L. Ed. 2d 111 (2020)). Petitioner's requests for relief include a request that this Court ". . .issue a writ[] of habeas corpus ordering his release from custody. . ." though Petitioner does not assert any grounds under which his release should be considered. *Id*. at 9. Instead, Petitioner's allegations concern the IJ's discretionary decision to remove Petitioner to Uganda and whether Petitioner's due process rights were upheld.

On March 26, 2026, Respondent filed their Response. (Doc. 5). Respondent argues that this Court does not have subject-matter jurisdiction to review Petitioner's claims because they directly relate to the content of his removal order. *Id*. at 4. On April 6, 2026, Petitioner filed a Reply. (Doc. 6). Petitioner begins his Reply by clarifying that "Petitioner raises a constitutional due process challenge to being removed to Uganda, a country where

safety is not guaranteed. [T]his claim arises from the manner and legality of the removal decision not merely the existence of a removal order." (Doc. 6 at 1). Petitioner's Reply hinges on his due process argument regarding third-country removal to Uganda. *Id*. at 2.

**DISCUSSION**

While this Court does not have jurisdiction to review whether Petitioner may be removed to a third-country, jurisdiction exists to review whether ICE followed the proper procedures for third-country removal. Review of Petitioner's due process rights under 8 U.S.C. § 1158 reveals that Petitioner received multiple notices and hearings regarding review of his asylum application. Any review of Petitioner's third-country removal under 8 U.S.C. § 1231 is not ripe because Petitioner's removal remains pending before the BIA and Petitioner has not followed the administrative procedures set forth in 8 U.S.C. § 1231(b).

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). In other words, this Court may only hear a case over which it has subject matter jurisdiction. *See id*. There are generally three ways a party may establish subject matter jurisdiction in federal court: "(1) jurisdiction pursuant to a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332." *Hallett v. Ohio*, 711 F. App'x 949, 950 (11th Cir. 2017) (per curiam) (citation omitted). "[T]he party invoking the court's jurisdiction bears the burden of proving the existence of federal jurisdiction," and if "the

district court lacks subject matter jurisdiction, it has no power to render a judgment on the merits and should dismiss the complaint. . .” *Id.*

The Immigration and Nationality Act (“INA”), at 8 U.S.C. § 1252(a)(2)(B), provides for the judicial review of orders of removal. Section 1252(a)(2)(B)(ii) states that

> [n]otwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).

Similarly, 8 U.S.C. § 1252(g) provides:

> except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter

8 U.S.C. § 1252(g).

Section 1252(g) is “narrow[ly] read[]” so that it blocks courts from exercising jurisdiction over only “three discrete actions[: the] ‘decision or action’ to ‘*commence* proceedings, *adjudicate* cases, or *execute* removal orders.’” *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482, 487 (1999) (quoting Section 1252(g)).

"Article III of the Constitution confines federal courts' jurisdiction to deciding live cases and controversies. . .The ripeness doctrine prevents federal courts from prematurely deciding issues that are abstract, hypothetical, or speculative." *Nasyrov v. Marin*, No. 5:26-CV-01167-SRM-DSR, 2026 WL 1850022 at 7 (C.D. Cal. May 12, 2026) (holding that review of petitioner's due process claim through third-country removal was not ripe because it was only speculative that he be removed to a third country without notice or an opportunity to be heard); *see also* U.S. Const. art. III, § 2. Before a petition filed under Section 2241 becomes ripe for judicial review, petitioners "seeking habeas relief pursuant to § 2241 are subject to administrative exhaustion requirements." *Krist v. Eichenlaub*, 386 F. App'x 920 (11th Cir. 2010). The United States District Court for the Middle District of Florida has explained that a noncitizen's challenge to third-country removal is not ripe where "he has not shown that he actually attempted to use the agency's established administrative procedures to challenge this new destination." *Olivera-Perez v. Noem*, No. 2:26-CV-944-KCD-DNF, 2026 WL 1251688 (M.D. Fla. May 7, 2026) (holding that no jurisdiction existed to review petitioner's third-country removal claim because it was not ripe under Section 1231(b)).

Third-country removal requires additional administrative procedures for both the Government and the noncitizen. Two statutes outline third-country removal: (1) 8 U.S.C. § 1158; and (2) 8 U.S.C. § 1231. 8 U.S.C. § 1158 outlines removal procedures to third countries where the noncitizen applies for asylum, whereas 8 U.S.C. § 1231 sets forth removal procedures after a final order of removal is entered by an IJ. *See* 8 U.S.C. § 1158; *cf*. 8 U.S.C. § 1231. Generally, "[a]ny alien who is physically present in the United States

or who arrives in the United States. . .may apply for asylum." 8 U.S.C. § 1158(a)(1). "The burden of proof is on the applicant to establish that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(i). To meet this burden, "the applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." *Id*. A noncitizen is not eligible for asylum where:

> the Attorney General determines that the alien may be removed, pursuant to bilateral or multilateral agreement, to a country. . .in which the alien's life or freedom would not be threatened on account of race, religion, nationality, membership in a particular social group, or political opinion, and where the alien would have access to a full and fair procedure for determining a claim to asylum or equivalent temporary protection, unless the Attorney General finds that it is in the public interest for the alien to receive asylum in the United States.
>
> 8 U.S.C. § 1158(a)(2)(A).

The decision on whether to grant asylum is a discretionary decision for the IJ after an evidentiary hearing takes place. 8 C.F.R. 1240.11(c)(3) (providing that both asylum applications and withholding of removal decisions are completed by an IJ after an evidentiary hearing at which the noncitizen is represented by counsel). At the evidentiary hearing, ". . .the alien shall be examined under oath on his or her application and may present evidence and witnesses in his or her own behalf. The alien has the burden of establishing that he or she is a refugee. . ." 8 C.F.R. 1240.11(c)(3)(iii). Where the noncitizen seeks asylum, "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." 8 U.S.C. § 1158(a)(3); *see also* 8 C.F.R. § 208.2(b) (clarifying that IJs have exclusive jurisdiction over asylum applications).

Under 8 U.S.C. § 1231, the ninety-day removal period starts on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of an alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id*. at 1231(a)(1)(B)(i)-(iii).

The beginning of the removal period does not hinder a noncitizen from applying for asylum. A noncitizen may apply for asylum under to 8 U.S.C. § 1158 either before or after the removal period begins under 8 U.S.C. § 1231. 8 C.F.R. § 1240.11(c)(1). U.S.C. § 1231(b) sets forth the removal location for noncitizens. *See* 8 U.S.C. § 1231(b). Generally, the noncitizen may designate the country to which he is to be removed if he is not an "arriving alien." 8 U.S.C. § 1231(b)(2)(A)-(B). However, the noncitizen's delegated country for removal may be disregarded under certain conditions. *See* 8 U.S.C. § 1231(b)(2)(C). If the noncitizen is not removed to the country of his choice, then the Attorney General is required to remove the noncitizen "to a country of which the alien is a subject, national, or citizen," unless the government of the country either does not inform the United States of its willingness to accept the noncitizen into the country within thirty days or is not willing to accept the noncitizen. 8 U.S.C. § 1231(b)(2)(D). Section 1231(b)(2)(E) then provides third-country removal options for aliens that cannot be removed under Sections 1231(b)(2)(A)-(D):

> If an alien is not removed to a country under the previous subparagraphs of this paragraph, the Attorney General shall remove the alien to any of the following countries:
> **(i)** The country from which the alien was admitted to the United States.
> **(ii)** The country in which is located the foreign port from which the alien left for the United States or for a foreign territory contiguous to the United States.
> **(iii)** A country in which the alien resided before the alien entered the country from which the alien entered the United States.
> **(iv)** The country in which the alien was born.
> **(v)** The country that had sovereignty over the alien's birthplace when the alien was born.
> **(vi)** The country in which the alien's birthplace is located when the alien is ordered removed.
> **(vii)** If impracticable, inadvisable, or impossible to remove the alien to each country described in a previous clause of this subparagraph, another country whose government will accept the alien into that country.

8 U.S.C. § 1231(b)(2)(E).

Third country removal under Section 1231(b)(2)(E)(vii) is limited when "the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § Section 1231(b)(3)(A). This third-country removal limitation under 8 U.S.C. § 1231(b)(3)(A) undergoes the same analysis required for asylum under 8 U.S.C. § 1158. *See* 8 U.S.C. § 1158(b)91)(B)(i); *see also* 8 U.S.C. § 1158(a)(2)(A).

No jurisdiction exists to review the IJ's discretionary decision to deny Petitioner's application for asylum. *See supra* at 6-7. Jurisdiction does exist to review whether Petitioner received due process throughout Petitioner's application for asylum. *H.S. v. Warden, Stewart Det. Ctr.*, No. 4:26-CV-131-CDL-CHW, 2026 WL 1811463 (M.D. Ga. Apr. 22, 2026), *report and recommendation adopted sub nom. H.S. v. Streeval*, No. 4:26-CV-131 (CDL), 2026 WL 1809764 (M.D. Ga. June 23, 2026) (holding that the district court

did have jurisdiction to review whether ICE adhered to its own policies and procedures); *see also P.N.B. v. Warden, Stewart Det. Ctr.*, No. 4:25-CV-515-CDL-CHW, 2026 WL 1671444 (M.D. Ga. Mar. 25, 2026), *report and recommendation adopted*, No. 4:25-CV-515-CDL-CHW, 2026 WL 1670826 (M.D. Ga. June 9, 2026) (holding that neither Section 1252(g) nor Section 1252(a)(2)(B)(ii) bars a review of whether petitioner received adequate process throughout his OSUP revocation). Any analysis of third-country removal under 8 U.S.C. § 1231 or *Zadvydas* is not ripe because Petitioner's removal order remains pending before the BIA. (Doc. 5-10); *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491 (2001). Petitioner has also failed to show that all administrative procedures have been followed under 8 U.S.C. § 1231.

8 U.S.C. § 1158 and 8 C.F.R. 1240.11 require notice and an evidentiary hearing for asylum applications. *See* 8 U.S.C. § 1158; *see also* 8 C.F.R. § 1240.11(c). Petitioner received his first notice of an asylum application hearing on July 24, 2025. (Doc. 5-5). Petitioner's hearing was initially continued to afford Petitioner time to seek counsel. (Doc. 5-1 at ¶ 9). Petitioner received a second notice of an asylum application hearing on October 9, 2026. (Doc. 5-6). Petitioner's asylum application hearing was continued again to give Petitioner time "to update his application for relief." (Doc. 5-1 at ¶ 10). Petitioner received a third notice of an asylum application hearing on December 11, 2025. (Doc. 5-8). On January 9, 2026, an IJ held an evidentiary hearing on Petitioner's asylum application and found that "[t]he [Petitioner] is barred from applying for such forms of protection" pursuant to the Agreement Between the Government of the United States of America and the

Government of the Republic of Uganda for Cooperation in the Examination of Protection Requests. (Doc. 5-9 at 2); *see also Agreement Between the Government of the United States of America and the Government of the Republic of Uganda for Cooperation in the Examination of Protection Requests*,[2] 90 Fed. Reg. 42, 597 (Sept. 3, 2025) (U.S.- Uganda ACA). Respondent provided Petitioner with multiple notices and the evidentiary hearing required under 8 C.F.R. § 1240.11. 8 C.F.R. § 1240.11. Therefore, no due process violation exists as to Petitioner's third-country removal under 8 U.S.C. § 1158.

## CONCLUSION

For the reasons discussed herein, it is **RECOMMENDED** that Petitioner's application for habeas corpus relief (Doc. 1) be **DISMISSED**.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, WITHIN FOURTEEN (14) DAYS after being served with a copy thereof. Any objection is limited in length to TWENTY (20) PAGES. See M.D. Ga. L.R. 7.4. The District Judge shall make a de novo determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

---

[2] This Agreement between the United States and Uganda is made ". . .in accordance with their obligations under. . .the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, adopted in New York on December 10, 1984. . ." *Agreement Between the Government of the United States of America and the Government of the Republic of Uganda for Cooperation in the Examination of Protection Requests*, 90 Fed. Reg. 42, 597 at Article 2.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 15th day of September, 2026.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge